UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DIANA STANFORD,

    Plaintiff,

Case No. 04-CV-71880

vs.                       HON. GEORGE CARAM STEEH

BLUE CROSS BLUE SHIELD OF
MICHIGAN, a Michigan Corporation,

    Defendant.

_____/

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

This is an action in which plaintiff Diana Stanford has brought claims against a former employer under the Family Medical Leave Act (FMLA), 29 U.S.C. § 2601 et seq. Defendant has moved for summary judgment on all claims in plaintiff's complaint. Because the court finds no question of material fact exists as to whether Stanford provided her employer with sufficient notice under the FMLA, or whether Stanford was retaliated against for taking leave under the FMLA, defendant's motion for summary judgment will be granted.

BACKGROUND

Plaintiff Diana Stanford ("plaintiff" or "Stanford") worked for defendant Blue Cross and Blue Shield of Michigan ("defendant" or "Blue Cross") for a period of approximately 13 ½ years. Upon her termination on June 26, 2003, plaintiff served as one of defendant's customer service representatives. Plaintiff filed this original action under the FMLA on May 19, 2004, alleging defendant's violation of the FMLA (Count I) and illegal retaliation for asserting entitlement to protection under the FMLA (Count II).

When plaintiff's employment with defendant was terminated June 26, 2003, she had been absent from work since May 28, 2003. The parties do not appear to be in dispute that plaintiff first called her supervisor, Steven Russ, on June 2, 2003, to tell him she would not be at work that day because she had a doctor's appointment. The second and last call made by plaintiff to Russ was June 4, 2003, when she again told him she would not be coming to work, without explanation. At her deposition, plaintiff did not recall any other communication with Russ after that date, and plaintiff does not assert that further communication with Russ occurred. On June 2, 2003, plaintiff had also called the Accident Fund Company ("AFC"), the administrator of defendant's short-term disability (STD) benefits plan, to open a claim for such benefits. Plaintiff's receipt of STD benefits was contingent on meeting requirements set forth in the CBA governing her employment with defendant.

On June 10, 2003, Kathryn Woodyard, defendant's Senior Human Resources Service Representative, wrote a letter to plaintiff advising her she was then considered absent without approved leave, and required that plaintiff "provide complete documentation to AFC to substantiate [her] absence on or before the close of business

2

day on June 16, 2003," or plaintiff's employment would be terminated. Specifically, Woodyard stated that "[d]ocumentation must substantiate the entire period of absence." See Exhibit 6 to Defendant's Memorandum of Law in Support of its Motion for Summary Judgment. Plaintiff acknowledged receipt of this letter at her deposition.

Ronald F. Williamson, M.D., who had examined plaintiff, faxed a "Notice of Disability" form contemplated by the CBA for short-term disability leaves to AFC on June 11, 2003. That form stated that Dr. Williamson had seen plaintiff on May 27, 2003, and stated a diagnosis of acute bronchitis and "other acute reaction to stress."[1] The form gave an anticipated return to work date of June 3, 2003. See Exhibit 7 to Defendant's Memorandum of Law in Support of its Motion for Summary Judgment. After receipt of the form by Dr. Williamson, AFC approved plaintiff for STD benefits for the period of May 28 through June 2, 2003. Per Kathryn Woodyard's affidavit, this same period was approved as time off under the FMLA by defendant. See Exhibit 11 to Defendant's Memorandum of Law in Support of its Motion for Summary Judgment. However, because plaintiff still felt "stressed out," she did not return to work on June 3, 2003.[2]

After receipt of the documentation from Dr. Williamson on June 11, Woodyard sent plaintiff another letter, dated June 12, 2003, which stated that because plaintiff had not returned to work on June 3, she remained absent without approved leave. That

---

[1] In fact, the form gave only code numbers in the diagnosis section, but these diagnoses are not in dispute.

[2] In her deposition, she attributed the stress to having witnessed a co-worker touch another co-worker inappropriately four months earlier, and to family issues.

3

letter stated that if documentation concerning this continuing absence was not received by June 18, 2003, plaintiff's employment was subject to termination. See Exhibit 13 to Defendant's Memorandum of Law in Support of its Motion for Summary Judgment. Plaintiff does not dispute receiving and understanding this letter. Plaintiff has testified that she called Woodyard as the date of June 18 approached, to let Woodyard know that she had faxed new documentation to Charlene Burk of AFC. Plaintiff agreed at deposition that she did not tell Woodyard anything about her condition or future plans in the phone call.

The form received by AFC via fax on June 18, 2003 was a Notice of Disability form signed by Cokey Powell, Ph.D., a licensed psychologist employed by the University Psychiatric Centers. She had seen plaintiff on June 2, 2003, and dated her signature of the form with that date. That form stated only a diagnosis of "occupational problem V 62.2$^3$," and gave a return to work date of July 18, 2003. On June 20, 2003, AFC sent a letter to plaintiff stating the documentation was incomplete for receipt of STD benefits, and denied such benefits.

Per Kathryn Woodyard's affidavit, before terminating an employee for absences from work for reason of illness or injury, the Human Resources department of defendant reviews documentation submitted to AFC by that employee to determine if the absence may qualify for protection under the FMLA. See Exhibit 11 to Defendant's Memorandum of Law in Support of its Motion for Summary Judgment. Woodyard received an email from Charlene Burk of AFC on June 20, 2003 the same date Burk's

---

$^3$ Footnote about defendant's interpretation, plaintiff's undocumented accusation of improper interpretation

letter went out to plaintiff, regarding denial of plaintiff's STD benefits claim for the period beginning June 3, 2003.  See Exhibit 17 to Defendant's Memorandum of Law in Support of its Motion for Summary Judgment.  Woodyard attests she then requested Dr. Powell's Notice of Disability form from Burk, and reviewed it.  Woodyard states she found in the manual on International Classification of Diseases (pertinent pages submitted as Exhibit 8 to Defendant's Memorandum of Law in Support of its Motion for Summary Judgment) that "occupational problem V 62.2" meant "other occupational circumstances of maladjustment," with subheadings of "career choice problem" and "dissatisfaction with employment."[4]  Woodyard asserts via affidavit that she discussed the foregoing with her immediate supervisor, defendant's Labor and Employee Relations Manager Shari Barrick, and that they determined that plaintiff had not demonstrated she was suffering from a serious health condition.  See Exhibit 11 to Defendant's Memorandum of Law in Support of its Motion for Summary Judgment.

     Charlene Burk of the AFC wrote a letter dated June 20, 2003 to plaintiff, notifying her that her claim for disability benefits had been denied.  There is no record of any further communication between plaintiff and either AFC or defendant after this, until Woodyard sent plaintiff notice of her termination on June 26, 2003, which stated

> [i]n my letter to you dated June 12, 2003 you were asked to substantiate your absence which began on May 27, 2003.  This letter further stated that failure to provide satisfactory documentation to substantiate your absence by June 18, 2003 would result in the termination of your employment.  To date, you have failed to provide the documentation necessary to substantiate your entire period of absence and you have not returned to work.

---

[4] Although plaintiff asserts Woodyard misinterpreted the diagnosis, plaintiff does not suggest another possible interpretation.

See Exhibit 18 to Defendant's Memorandum of Law in Support of its Motion for Summary Judgment.

Defendant now moves for summary judgment as to all claims in plaintiff's complaint, on the grounds that plaintiff did not comply with FMLA requirements to qualify the dates in question for protection under the FMLA and that plaintiff has not established a claim of retaliation. The motion was fully briefed and oral argument was held May 5, 2005. The court's determination on this motion is set forth below.

## STANDARD

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  See Redding v. St. Eward, 241 F.3d 530, 532 (6th Cir. 2001).  The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice. The procedure is not a disfavored procedural shortcut. Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986); see also Cox v. Kentucky Dept. of Transp., 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Amway Distributors Benefits Ass'n v. Northfield Ins. Co., 323 F.3d 386, 390 (6th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences therefrom must be construed in the light most

favorable to the non-moving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Redding, 241 F.3d at 532 (6th Cir. 2001). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original); see also National Satellite Sports, Inc. v. Eliadis, Inc., 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 270 (1968); see also McLean v. 988011 Ontario, Ltd., 224 F.3d 797, 800 (6th Cir. 2000). Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. Anderson, 477 U.S. at 248, 252. Rather, there must be evidence on which a jury could reasonably find for the non-movant. McLean, 224 F.3d at 800 (citing Anderson, 477 U.S. at 252).

## ANALYSIS

An employee is entitled to take up to twelve weeks of FMLA-protected leave in a twelve month period if he or she requires care for a "serious health condition that makes the employee unable to perform the functions of ...[his] position." 29 U.S.C. § 2612(a)(1)(D). The term "serious health condition" is defined in the statute as an "illness, injury, impairment, or physical or mental condition that involves..."

hospitalization or other inpatient care or, pertinent here, "continuing treatment by a healthcare provider." 29 U.S.C. § 2611(11).

To invoke the protections of the FMLA, an eligible employee has to request leave, giving her employer notice that the leave is required for care of a serious health condition that makes it impossible for the employee to perform the duties of her position. Brenneman v. MedCentral Health System, 366 F.3d 412, 421 (6th Cir. 2004). The FMLA does not have to be expressly referenced in the notice, but the notice must be "reasonably adequate to apprise the employer of the employee's request to take leave for a serious health condition that rendered [him] unable to perform his job." Id. (citing Brohm v. JH Properties, Inc., 149 F.3d 517, 523 (6th Cir. 1998), Cavin v. Honda of Am. Mfg., Inc., 346 F.3d 713, 725 (6th Cir. 2003)). Although, if the notice is sufficient, the employer then has a burden to gather any additional information necessary to qualify the leave under the FMLA, Hammon v. DHL Airways, Inc., 165 F.3d 441, 449 (6th Cir. 1999), "the FMLA does not require an employer to be clairvoyant." Brenneman, 366 F.3d at 429.

1. Interference with FMLA Rights

Defendant's first argument in this motion is that after June 2, 2003, plaintiff was not suffering from a "serious health condition," required for protection by the FMLA. Both parties cite to Department of Labor regulations located at 29 CFR § 825.114(a) which define "serious health condition" with more specificity than the FMLA statute itself:

> (a) For purposes of FMLA, "serious health condition" entitling an employee to FMLA leave means an illness, injury, impairment, or physical or mental condition that involves:
> (1) Inpatient care (i.e., an overnight stay) in a hospital, hospice, or residential medical care facility, including any period of incapacity (for

> purposes of this section, defined to mean inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefor, or recovery therefrom), or any subsequent treatment in connection with such inpatient care; or
> (2) Continuing treatment by a health care provider. A serious health condition involving continuing treatment by a health care provider includes any one or more of the following:
> (i) A period of incapacity (i.e., inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefor, or recovery therefrom) of more than three consecutive calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves:
> (A) Treatment two or more times by a health care provider, by a nurse or physician's assistant under direct supervision of a health care provider, or by a provider of health care services (e.g., physical therapist) under orders of, or on referral by, a health care provider; or
> (B) Treatment by a health care provider on at least one occasion which results in a regimen of continuing treatment under the supervision of the health care provider.
> (ii) Any period of incapacity due to pregnancy, or for prenatal care.
> (iii) Any period of incapacity or treatment for such incapacity due to a chronic serious health condition. A chronic serious health condition is one which:
> * * * * *

29 CFR § 825.114(a). As defendant asserts, plaintiff does not contend that she received inpatient care((a)(1)). Nor does she assert that she suffered a period of incapacity due to pregnancy or a chronic serious health condition ((a)(2)(B)(ii), (iii)). Therefore, as defendant's brief asserts, and plaintiff does not dispute, in order to show she had a serious health condition, there must be at least a question of material fact as to whether plaintiff was under continuing treatment per § 825.114(a)(2)(i)(A) or (B).

Plaintiff has not proffered evidence to support such a finding. Whether or not plaintiff has satisfied a showing of incapacity for three or more days, she has not shown "treatment two or more times by a health care provider," or "treatment by a health care provider on at least one occasion which results in a regiment of continuing treatment under the supervision of the health care provider." See 29 C.F.R. § 825.114(a)(2)(i)(A) & (B). Plaintiff visited Dr. Powell one time, on June 2, 2003, and was diagnosed with

9

the "occupational problem" discussed above. As defendant asserts, any argument by plaintiff concerning a second treatment by a psychiatrist in Dr. Powell's office, two weeks *after* the termination date of June 26, 2003, does not qualify, as plaintiff was no longer an employee of the defendant eligible for FMLA leave under 29 U.S.C. § 2612(a)(1). See Brohm v. JH Properties, Inc., 149 F.3d 517, 523 (6th Cir. 1998).

2. FMLA Retaliation Claim

Discharge for the reason that an employee has taken FMLA leave is prohibited under the FMLA. "An employer is prohibited from discriminating against employees...who have used FMLA leave," and the taking of FMLA leave may not be used "as a negative factor in employment actions." 29 C.F.R. § 825.200(c). If it is found that an employer has retaliated against an employee for taking FMLA leave, the employer may be liable for compensatory damages. If the employer was not acting in good faith, it may also be subject to a claim for additional liquidated damages. 29 U.S.C. § 2617(a)(1)(A); Arban v. West Pub. Corp., 345 F.3d 390, 403 (6th Cir. 2003).

When a plaintiff does not have direct evidence of retaliation, as in this case, the burden-shifting system of McDonnell Douglas applies, requiring the plaintiff to first establish a *prima facie* case of retaliation. As each of the parties acknowledges, for a *prima facie* case, the plaintiff must show that she availed herself of rights afforded by the FMLA, that her employer took adverse action in connection with her employment, and that there was a causal connection between the two. Skrjanc v. Great Lakes Power Service Company, 272 F.3d 309, 314 (6th Cir. 2001).

Once the plaintiff makes a *prima facie* case, the McDonnell Douglas framework requires the employer to articulate a legitimate, nondiscriminatory reason for the

10

adverse employment action. Then it is the plaintiff's burden to show that the alleged nondiscriminatory reason was in fact pretextual, and that unlawful discrimination was the actual reason for the adverse action. Id.

The court's determination on plaintiff's claim of illegal retaliation for exercising rights under the FMLA is related to its findings above. "An employer is prohibited from discriminating against employees ... who have used FMLA leave," and employers cannot "use the taking of FMLA leave as a negative factor in employment actions." 29 C.F.R. § 825.220(c). See Arban, 345 F.3d 390, 403 (citing Skrjanc v. Great Lakes Power Serv. Co., 272 F.3d 309, 314 (6th Cir. 2001). Where there is a finding of retaliation, the employer may be liable for liquidated damages in addition to compensatory damages. As found above, the plaintiff has not raised a question of material fact as to whether she was under continuing treatment as required by applicable regulations. Under these circumstances, where the court has found for defendant on the question of interference with a former employee's rights under the FMLA, it is the court's finding that no question of material fact exists concerning whether plaintiff can demonstrate a *prima facie* case of retaliation. Moreover, even if plaintiff had been able to establish her *prima facie* case, the employer has, clearly, established a valid, nondiscriminatory reason for the discharge (i.e. discharge for unscheduled absenteeism). Summary judgment will enter for defendant on this count as well.

## CONCLUSION

For the reasons stated above, defendant's motion for summary judgment is hereby GRANTED. Accordingly, plaintiff's complaint is dismissed in its entirety.

IT IS SO ORDERED.

                                              S/George Caram Steeh
                                              GEORGE CARAM STEEH
                                              UNITED STATES DISTRICT JUDGE

Dated: June 3, 2005

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record on June 3, 2005, by electronic and/or ordinary mail.

                                              S/Josephine Chaffee
                                              Secretary/Deputy Clerk